ORIGINAL
D2F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
RICHARD W. DRAKE,

                    Plaintiff,

        -against-                                    **MEMORANDUM AND ORDER**
                                                     Case No. 02-CV-1924 (FB) (RML)
LABORATORY CORPORATION OF AMERICA
HOLDINGS, KEVIN WILSON, NORTHWEST
TOXICOLOGY, INC., DAVID J. KUNTZ,
ELSOHLY LABORATORIES, INC., DR. WILLIAM
H. WHALEY, and WEST PACES FERRY
MEDICAL CLINIC,

                    Defendants.
--------------------------------------------------------------x

*Appearances:*
*For Plaintiff:*                        *For Defendant ElSohly Laboratories, Inc.:*
SAM O. MADUEGBUENA, ESQ.                JELTJE DEJONG, ESQ.
Maduegbuena Cooper & Ekperigin, LLP     Devitt Spellman Barrett, LLP
67 Wall Street, 22nd Floor              50 Route 111
New York, NY 10005                      Smithtown, NY 11787

*For Defendants Laboratory Corporation of*    *For Defendants William H. Whaley and West*
*America Holdings and Kevin Wilson:*          *Paces Ferry Medical Clinic:*
D. FAYE CALDWELL, ESQ.                  IRA ROSENSTEIN, ESQ.
Caldwell & Clinton P.L.L.C.             Orrick, Herrington & Sutcliffe LLP
1001 Fannin Street, Suite 1000          666 Fifth Avenue
Houston, TX 77002                       New York, NY 10103

*For Defendants Northwest Toxicology, Inc.*
*and David J. Kuntz:*
JEFFREY HURD, ESQ.
Phelan, Burke & Scolamiero, LLP
302 Washington Avenue Ext.
P.O. Box 15085
Albany, NY 12212

**BLOCK, Senior District Judge:**

Familiarity with the procedural history of this action and the related litigation involving Delta Air Lines, Inc. ("Delta") is presumed. *See Drake v. Laboratory Corp., et al.,* 290 F. Supp. 2d 352 (E.D.N.Y. 2003) (holding state-law claims not preempted and certifying issue for interlocutory appeal); *id.* at 353-56 (reviewing history of Delta litigation); *Drake,* No. 04-0137 (2d Cir. Mar. 4, 2004) (denying defendants' petitions for leave to proceed with interlocutory appeal, and questioning Court's jurisdiction over remaining state-law claims); *Drake,* 323 F. Supp. 2d 449 (E.D.N.Y. 2004) (retaining jurisdiction over state-law claims and re-certifying preemption issue for interlocutory appeal); *Drake,* 458 F.3d 48 (2d Cir. 2006) (affirming). In sum: Plaintiff Richard W. Drake ("Drake") filed a complaint alleging, *inter alia,* state common law claims; defendants moved to dismiss those claims pursuant to Fed. R. Civ. P. 12(b)(6) on the ground of preemption; the Court held that they were not preempted, but twice certified the question for interlocutory appeal. *See Drake,* 290 F. Supp. 2d at 376; 323 F. Supp. 2d at 456. The Second Circuit accepted the Court's second certification and affirmed. *See Drake,* 458 F.3d at 51-52.

Before the Second Circuit ruled on the preemption issue, defendants Laboratory Corporation of America ("LabCorp"), Kevin Wilson ("Wilson"), Northwest Toxicology ("Northwest"), David J. Kuntz ("Kuntz"), ElSohly Laboratories ("ElSohly"), William H. Whaley ("Whaley") and West Paces Ferry Medical Clinic ("West Paces Ferry") filed a second Rule 12(b)(6) motion to dismiss, asserting that (1) substantively, Drake's state-law claims were not cognizable, (2) Drake's claims were barred by collateral

2

estoppel, and (3) Drake's claims were barred by the statute of limitations. Defendants Wilson, Whaley, West Paces Ferry and ElSohly also moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Although these motions were fully briefed in November 2004, *see* Docket Entry Nos. 96-111, the Court elected, in the interest of judicial economy, to postpone their disposition until the Second Circuit ruled on the preemption issue.

The Second Circuit issued its preemption decision on July 19, 2006. *See Drake*, 458 F.3d 48. It explained that "Drake may seek state-law remedies for violations of the federal regulations," but noted that "[i]f Drake is asserting that conduct addressed by the federal regulations is 'wrongful' under state law although it does not violate the federal regulations, such claims are preempted." *Id.* at 65. With respect to Drake's negligence claim, the circuit court ruled that it was preempted only "to the extent that it refers to 'standards and protocols' other than those in federal regulations." *Id.* With respect to his negligent misrepresentation claim, the court held that it was not preempted. *See id.* 65-66. The court did not address Drake's other state-law claims – tortious interference, negligent infliction of emotional distress, civil conspiracy, and prima facie tort.

In light of the circuit court's preemption rulings, defendants' other proffered grounds for dismissal are now meet for disposition.[1] For the reasons stated below, the

---

[1] Further application of the circuit court's preemption rulings may be necessary at trial. *See Drake*, 458 F.3d at 66 ("On remand . . . and as the litigation proceeds, Drake will continue to be precluded from developing theories of recovery that are incompatible with the FAA's drug testing program.").

Court grants in part and denies in part defendants' motions to dismiss.

## I. Failure to State a Claim

### A. Negligence

A finding of negligence "may be based only upon the breach of a duty. If . . . the defendant owes no duty to the plaintiff, the action must fail. Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists." *Darby v. Compagnie Nat'l Air France*, 96 N.Y.2d 343, 347 (2001) (citations omitted).

The New York Court of Appeals has not had occasion to determine whether a drug-testing facility owes a duty of care to a non-contracting employee. Nonetheless, two district courts within the Second Circuit have held that it would recognize such a duty and, accordingly, a common law cause of action for negligence. *See Coleman v. Town of Hempstead*, 30 F. Supp. 2d 356, 365 (E.D.N.Y. 1999) (laboratory may be liable under negligence theory since it owed plaintiff duty to maintain urine sample in chain of custody and preserve specimen for retesting); *Santiago v. Greyhound Lines, Inc.*, 956 F. Supp. 144, 153 (N.D.N.Y. 1997) (doctor had duty to collect employee's specimen with due care). More recently, the Appellate Division, First Department, held:

> While a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party, the Court of Appeals has identified three circumstances in which a duty of care to non-contracting third parties may arise out of the contractual obligation or the performance thereof . . . (1) where the contracting party, in failing to exercise reasonable care in the execution of the contract, creates an unreasonable risk of

> harm to others, or exacerbates that risk; (2) where a plaintiff detrimentally relies on the defendant's continued performance of a contractual obligation; and (3) where the contracting party comprehensively agrees to assume and displace the promisee's safety-related obligations.

*Fernandez v. Otis Elev. Co.*, 772 N.Y.S.2d 14, 17 (1st Dep't 2004) (internal quotation marks and citations omitted) (citing *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 140 (2002)).

Drake alleges that (1) "Delta entered into a contract with defendants with respect to the collection, testing, handling and or analysis of urine samples," Compl. ¶ 125; (2) "Delta also contracted with defendant Whaley to perform the federally-mandated duties of Medical Review Officer ("MRO") for Delta," *id.* ¶ 27; (3) "Wilson was the Certifying Scientist with respect to the initial testing, handling and/or analysis of Drake's urine sample by LabCorp," *id.* ¶ 17; (4) LabCorp negligently sent some other employee's drug test results to Delta and Whaley, "who was and is an employee, owner, officer, and agent of . . . West Paces Ferry," *id.* ¶¶ 23, 46; (5) LabCorp and Whaley sent a sample of someone else's urine sample to Northwest, *see id.* ¶ 53; (6) Northwest accepted and improperly documented this sample and conveyed false results to Delta and Whaley, *see id.* ¶¶ 55, 56; (7) Northwest sent the remainder of the sample to ElSohly, who tested it and "coneveyed unsubstantiated and improper speculation about the sample to Delta and Whaley," *id.* ¶¶ 57, 60, 61; and (8) Kuntz at Northwest re-tested the sample without proper documentation or control, and transmitted the results to Delta, *see id.* ¶ 65, 66.

With respect to defendants LabCorp, Wilson, Northwest, Kuntz, ElSohly and

Whaley, these allegations are sufficient to support a claim of negligence under either (1) the district courts' interpretation of the duty of care owed under New York law, *see Coleman,* 30 F. Supp. 2d at 365; *Santiago,* 956 F. Supp. at 153, or (2) the First Department's holding in *Fernandez,* 772 N.Y.S.2d at 17 ("[A] duty of care to non-contracting third parties may arise . . . where the contracting party, in failing to exercise reasonable care in the execution of the contract, creates an unreasonable risk of harm to others, or exacerbates that risk . . . .").

Drawing "all reasonable inferences" in favor of the non-moving party as required under Rule 12(b)(6), *Board of Educ. of Pawling Central School Dist. v. Schutz,* 290 F.3d 476, 479 (2d Cir. 2002), the Court holds that Drake also states a claim against West Paces Ferry under the doctrine of respondeat superior by alleging (1) that Delta contracted "with defendants with respect to the collection, testing, handling and or analysis of urine samples," Compl. ¶ 125, and (2) that Whaley was an agent and employee of West Paces Ferry, *id.* ¶ 23. *See Lundberg v. State,* 25 N.Y.2d 467, 470 (1969) ("[A]n employer will be liable for the negligence of an employee committed while the employee is . . . doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities.").

## B. Tortious Interference

"[T]he elements of a tortious interference claim are: (a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach

resulted in damage to the plaintiff." *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001).

The parties do not dispute that Drake was an at-will employee of Delta.

In cases involving at-will employment contracts, the New York Court of Appeals has

> upheld complaints . . . in actions seeking damages for
> interference when the alleged means employed by the one
> interfering were wrongful as consisting of fraudulent
> representations, or threats, or as in violation of a duty of
> fidelity owed to the plaintiff by the defendant by reason of a
> relation of confidence existing between them. Absent some
> such misconduct, no liability has resulted to one whose actions
> have induced nonperformance of a contract deemed to be
> voidable and thus unenforceable.

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 194 (1980) (internal citations

omitted).

Since Whaley was an agent of Delta (as Medical Review Officer or "MRO"),

he could not be a "third party" liable for tortious interference unless he "exceeded the

bounds of his . . . authority." *See Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996) (citing

*Kosson v. Algaze*, 610 N.Y.S.2d 227, 228-29 (1st Dep't 1994), *aff'd*, 84 N.Y.2d 1019 (1995)).

Although Drake alleges that Whaley "abdicate[d] to Delta's management his federally-

mandated duty to make a final decision on the drug test," Compl. ¶ 63, he makes no claim

that Whaley ever acted without Delta's approval; accordingly, the claim against Whaley

would have to be dismissed.

With respect to the remaining defendants, Drake alleges that "Whaley

negligently and knowingly conspired with testing laboratories, defendants LabCorp,

Northwest and ElSohly and Delta employees and agents to improperly use the DOT drug

testing to get rid of Drake." Compl. ¶ 102. Under New York law, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort," *Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) (internal quotation marks and citations omitted); accordingly, Drake must allege that one of the defendants actually committed tortious interference before he can connect the actions of the others. To this end, Drake alleges:

> By falsely and improperly indicating to Delta that Drake had adulterated his urine sample, supplying false and misleading information about the results of Drake's drug test to Delta, and by improper communications with Delta, defendants wrongfully interfered with the performance of Drake's continued contract of employment, causing Drake to be dismissed from his employment with Delta.

Compl. ¶ 113. This allegation, as well as the separate allegations upon which it is based, *see id.* ¶¶ 35-66, support Drake's claim that defendants acted negligently in processing his urine sample. *See supra* Part I.A. They are insufficient, however, to state a claim for tortious interference since, by definition, "the interference must be intentional, not merely negligent or incidental to some other, lawful, purpose." *Alvord and Swift v. Stewart M. Muller Const. Co., Inc.*, 46 N.Y.2d 276, 281 (1978). Absent any allegation of wrongful means that would satisfy the standard in *Guard Life*, 50 N.Y.2d at 194, the claim against the remaining defendants must also be dismissed.

## C. Negligent Misrepresentation

"[T]he elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information;

(2) the defendant made a false representation that he . . . should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). In cases where the representation was not made directly to the plaintiff, the New York Court of Appeals has "required actual privity, or something approaching privity, such as conduct on the part of defendant linking defendant to plaintiff which evinces defendant's understanding of plaintiff's reliance." *Eiseman v. State*, 70 N.Y.2d 175, 188 (1987). Nonetheless, a "[plaintiff] cannot claim reliance on alleged misrepresentations of which [he] was unaware." *See Securities Investor Protection Corp. v. BDO Seidman, L.L.P.*, 95 N.Y.2d 702, 709 (2001).

As an element of an action for negligent misrepresentation, "[r]eliance . . . connotes something more than simply a bare hope or anticipation; in order that liability result from a negligent statement the words communicated must be 'words upon which others were expected to rely and upon which they did act or failed to act to their damage.'" *Home Mut. Ins. Co. v. Broadway Bank and Trust Co.*, 53 N.Y.2d 568, 578 (1981) (citation omitted). Accordingly, it is not sufficient that the plaintiff was adversely affected by the defendants' misrepresentation; whether the defendants' words were communicated directly to the plaintiff or to a third party, the plaintiff must have relied upon them – by acting or failing to act upon them – to his detriment. *See Antonious v. Muhammad*, 673 N.Y.S.2d 158, 159 (2d Dep't 1998) (holding arrestees could not maintain action against

9

county detectives and assistant district attorneys where arrestees did not rely to their detriment on any information provided by them); *Williams v. State*, 456 N.Y.S.2d 491, 493 (3d Dep't 1982) (dismissing claim because "claimant did not rely upon the State's misprepresentation, the Deputy Sheriff did").

Drake alleges that defendants made false representations to Delta, *see* Compl. ¶ 119; he does not allege that defendants made any false representation directly to him. In order to state a claim for negligent misrepresentation, then, Drake would have to allege that he was either in privity with defendants, or that defendants' conduct evinced an understanding that Drake would rely on their representations to Delta. *See Eiseman*, 70 N.Y.2d at 188. Drake fails to allege either. Although he alleges that his continued employment depended upon defendants' accurate reporting, *see* Compl. ¶ 129 ("Defendants' misrepresentations were relied upon by Delta to terminate Drake's employment."), Drake has failed to allege that he even knew about the misrepresentations at the time he was fired, much less that he relied upon them to his detriment.

## D. Negligent Infliction of Emotional Distress

A plaintiff may establish a claim for negligent infliction of emotional distress under either the "bystander" theory or the "direct duty" theory:

> A plaintiff may recover for a purely emotional injury under the 'bystander' theory when: (1) [he] is threatened with physical harm as a result of defendant's negligence; and (2) consequently [he] suffers emotional injury from witnessing the death or serious bodily injury of a member of [his] immediate family. . . . Under the 'direct duty' theory[,] a plaintiff has a cause of action . . . if [he] suffers an emotional

10

> injury from defendant's breach of a duty which unreasonably endangered [his] own physical safety.

*Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (citations omitted). Since Drake does not allege that defendants' negligence resulted in a threat of physical harm, or that defendants' breach of duty endangered his physical safety, his claim must be dismissed.

## E. Prima Facie Tort

Drake's first asserted a claim for prima facie tort in his opposition papers, *see* Pl.'s Mem. of Law in Opp'n at 40-41; it does not appear in his complaint. Even if it were asserted in the complaint – or the Court granted leave to amend to include it – the claim would nonetheless fail under Rule 12(b)(6).

"The requisite elements of a cause of action for prima facie tort are (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142-43 (1985). Since Drake does not allege that defendants *intended* to cause his termination, *see supra* Part I.B (discussion of tortious interference claim), he fails to state the first element of the claim.

## F. Civil Conspiracy

As discussed above, "a mere conspiracy to commit a tort is never of itself a cause of action . . . . Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." *Alexander*, 68 N.Y.2d at 969 (internal quotation marks and citations omitted). "Since a civil conspiracy cause of action

requires a showing of intentional conduct, negligence cannot serve as the underlying tort."

*Rosen v. Brown & Williamson Tobacco Corp.*, 782 N.Y.S.2d 795, 795 (2d Dep't 2004). Only

Drake's negligence claim survives defendants' motion to dismiss; accordingly, Drake

cannot proceed on a claim for civil conspiracy.

## II. Collateral Estoppel

According to the New York Court of Appeals, the doctrine of collateral

estoppel:

> precludes a party from relitigating in a subsequent action or
> proceeding an issue clearly raised in a prior action or
> proceeding and decided against that party . . . . [T]he issue
> must have been material to the first action or proceeding and
> essential to the decision rendered therein, and it must be the
> point actually to be determined in the second action or
> proceeding such that a different judgment in the second would
> destroy or impair rights or interests established by the first.

*Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500 (1984) (internal quotation marks and

citations omitted).

Defendants argue that Drake's claims, insofar as they are based on alleged

violations of federal drug testing regulations, are barred since they have already been

decided by the Second Circuit. *See Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 170-71 (2d Cir.

1998) (finding no implied private right of action for airline employees to enforce federal

drug testing regulations). Yet Drake's surviving claim for negligence under New York law

is not based on the circuit court's determination of that issue, as acknowledged by the

Second Circuit in its recent decision. *See Drake*, 458 F.3d at 64 ("Because remedies are not

addressed by the FAA regulations, the state law under which Drake seeks remedies for violations of the regulations does not 'cover the subject matter' of the regulations."). Moreover, several facts underlying the present case were not even known to Drake or the courts at the time of that decision. Accordingly, collateral estoppel does not apply.

## III. Statute of Limitations

### A. Standard of Review

"Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss[, which] is properly treated as a Rule 12(b)(6) motion to dismiss . . . ." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see also F.D.I.C. v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 388 (E.D.N.Y.1997) ("While a statute-of-limitations defense may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), such motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (internal quotation marks and citation omitted)).

### B. New York Statute of Limitations and Tolling

In New York, the statute of limitations for negligence is three years. *See* N.Y. C.P.L.R. § 214; *see also Green v. Emmanuel African Methodist Episcopal Church*, 718 N.Y.S.2d 324, 324 (1st Dep't 2000) (applying three-year statute of limitations). The statute runs from the date of the injury, not the date the injury was perceived. *See Fleet Factors Corp. v. Werblin*, 495 N.Y.S.2d 434, 436 (2d Dep't 1985) (citing *Schmidt v. Merchants*

*Despatch Transp. Co.*, 270 N.Y. 287, 300 (1936)).[2]

The statute of limitations may be tolled, however, under the theory of equitable estoppel. "New York . . . use[s] the label 'equitable estoppel' to cover the circumstance[] where the defendant conceals from the plaintiff the fact that he has a cause of action . . . ." *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002) (internal quotations and citation omitted). "[A] defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action . . . . [D]ue diligence on the part of the plaintiff in bringing his action is an essential element for the applicability of the doctrine of equitable estoppel, to be demonstrated by the plaintiff when he seeks the shelter of the doctrine." *Simcuski v. Saeli*, 44 N.Y.2d 442, 448-50 (1978). "The determinative factor is whether there is purposeful concealment." *Kamruddin v. Desmond*, 741 N.Y.S.2d 559, 561 (2d Dep't 2002).

## C. Facts

Drake submitted a urine specimen to his employer Delta on October 28, 1993. *See* Compl. ¶ 32. The specimen was initially tested by Compuchem (LabCorp's predecessor in interest), *see id.* ¶ 39, and subsequently tested by Northwest, *see id.* ¶¶ 55-56, 64; Drake

---

[2]If not dismissed, Drake's claims for negligent infliction of emotional distress and tortious interference would also be subject to a three-year statute of limitations. *See, e.g.,* *Augeri v. Roman Catholic Diocese of Brooklyn*, 639 N.Y.S.2d 640, 641 (4th Dep't 1996) (negligent infliction of emotional distress); *Mannix Industries, Inc. v. Antonucci*, 594 N.Y.S.2d 327, 329 (2d Dep't) (tortious interference), *appeal dismissed without opinion,* 82 N.Y.2d 846 (1993). Drake's claim for negligent misrepresentation would be subject to a six-year statute of limitations. *See, e.g., Milin Pharmacy, Inc. v. Cash Register Sys., Inc.*, 570 N.Y.S.2d 341, 341-42 (2d Dep't 1991).

alleges that defendants improperly documented their testing procedures and that the positive test results for adulterants were false, *see id.* ¶¶ 51, 53-55, 61. Delta terminated Drake's employment on December 28, 1993. *See id.* ¶ 70.

On September 29, 1994, Delta sent Drake documents from Compuchem that described Drake's urine sample as "unsuitable for testing." Drake Decl., Ex. B (Drug Testing Custody and Control Form). In the same correspondence, a Delta representative wrote that "[w]hile Delta does have other documents concerning that test, those documents pertain to Delta's personnel policies and the discipline that was imposed in this situation." *Id.* (Letter).

Drake filed this action against defendants on December 28, 2001, alleging that: (1) [f]ollowing the termination of his employment, [he] promptly requested [that] Delta and defendants provide him with all records relating to his . . . drug test," Compl. ¶ 71; (2) "[d]efendants failed and refused to provide . . . the required documentation, until the Federal Aviation Authority ('FAA') directed defendant Whaley and Delta in February 2000, to produce same," *id.* ¶ 72; and (3) "in order to conceal their wrongful acts, all the defendant laboratories (LabCorp, Northwest and ElSohly) intentionally destroyed or claim to have lost all records of the testing," *id.* ¶ 73. In opposition to the present motions, Drake further alleges that he requested records from Compuchem in letters dated October 25, 1994, and September 16, 1996, and that he received no response. *See* Drake Decl. ¶¶ 8, 9; *id.*, Exs. C and D (Letters).

## D. Analysis

If the Court were to consider the filing date only, it would dismiss Drake's negligence claim since it was asserted eight years after the date of injury (i.e., termination of employment). But Drake alleges that defendants ignored his requests for information and intentionally concealed their wrongdoing until February 2000, when the FAA directed them to produce documents related to the drug tests. Drake's allegations of defendants' purposeful concealment and his own due diligence during the period he wishes to toll are sufficient to state a claim for equitable estoppel; accordingly, the Court denies defendants' motion to dismiss on statute-of-limitations grounds and leaves the issue to be decided at trial. *See Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243 n.2 (2d Cir. 1984) ("Where the statute of limitations operates as an affirmative defense . . . issues of fact as to the application of that defense must be submitted to the jury.").

## IV. Personal Jurisdiction

Defendants Wilson, Whaley, West Paces Ferry and ElSohly argue that Drake's claims against them should be dismissed for lack of personal jurisdiction.

"Eventually, . . . the plaintiff must establish [personal] jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). Nonetheless, the Second Circuit has held that:

> In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits

16

alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.

*Id.*(citations omitted).

"If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Id.; see also In re Magnetic Audiotape Antitrust Litigation,* 334 F.3d 204, 206 (2d Cir. 2003) ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."); *PDK Labs Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997) ("A plaintiff facing a Fed. R. Civ. P. 12(b)(2) motion to dismiss made before any discovery need only allege facts constituting a prima facie showing of personal jurisdiction."). Where the issue is addressed on the affidavits submitted, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79-80 (2d Cir. 1993) (citation omitted).

Although a court "will not draw 'argumentative inferences' in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994) (citation omitted), the Second Circuit has held that limited discovery may be necessary to develop plaintiff's allegations of jurisdiction prior to a finding that plaintiff failed to make a prima facie showing. *See In re Magnetic,* 334 F.3d at 207-08 (holding district court improperly denied plaintiffs opportunity to engage in limited discovery prior to dismissal for lack of

personal jurisdiction); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("[A] court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." (internal quotation marks and citation omitted)).

Accordingly, district courts within the Second Circuit have ordered jurisdictional discovery where the plaintiff made less than a prima facie showing, but "made a sufficient start toward establishing personal jurisdiction." *Uebler v. Boss Media*, 363 F. Supp. 2d 499, 506 (E.D.N.Y. 2005) (internal quotation marks and citation omitted); *see also Smit v. Isiklar Holding A.S.*, 354 F. Supp. 2d 260, 263 (S.D.N.Y. 2005) ("[A] court may order limited discovery targeted at the missing jurisdictional elements, if plaintiff has shown that such an exercise would serve to *fill any holes* in its showing." (internal quotation marks and citation omitted)); *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 194 (S.D.N.Y. 2000) (denying motion to dismiss to permit plaintiff to take jurisdictional discovery despite plaintiff's "conclusory" allegations).

## A. New York Long-Arm Statute

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits – subject, of course, to certain constitutional limitations of due process." *Robinson*, 21 F.3d at 510. New York's long-arm statute provides, in relevant part:

> [A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere

to supply goods or services in the state; or

\* \* \*

3. commits a tortious act without the state causing injury to person or property within the state . . . , if he . . .
(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

N.Y. C.P.L.R. § 302(a).

For purposes of section 302(a)(1), a non-domiciliary "transacts business" when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Plaintiff's claim must arise out of that business activity. *See McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981) ("Essential to the maintenance of a suit . . . is the existence of some articulable nexus between the business transacted and the cause of action sued upon.").

For the purposes of section 302(a)(3)(ii), "New York courts have looked to both the absolute amount and percentage of a defendant's interstate income in determining whether that income is substantial." *Traver v. Officine Meccaniche Toshci SpA*, 233 F. Supp. 2d 404, 413 (N.D.N.Y. 2002) (internal quotation marks and citation omitted). District courts within the Second Circuit agree that "the time the complaint was filed . . . is relevant in determining whether the defendant meets the 'substantial revenue' prong of § 302(a)(3)(ii)," but have "consider[ed] a period of years around the time that the complaint

19

was filed, rather than only that one particular year, in determining whether the defendant derives substantial revenues from interstate or international commerce." *Id.* at 413-14 (citing cases considering defendants' revenue over three or four-year period).

## B. Federal Due Process Requirements

Once the Court determines there is a statutory basis for exercising jurisdiction under New York law, it must then assess whether exercising personal jurisdiction over the non-domiciliary defendant comports with due process. The due process test consists of both a "minimum contacts" inquiry and a "reasonableness" inquiry. *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

With respect to the first inquiry, the Supreme Court has drawn a distinction between "specific" jurisdiction and "general" jurisdiction. Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). General jurisdiction is based on the defendant's general business contacts with the forum state, and permits a court to exercise jurisdiction in a case where the subject matter of the suit is unrelated to those contacts. *See id.* at 415 n.9. Since general jurisdiction is not related to the events giving rise to the suit, the Supreme Court has imposed a more stringent minimum contacts test by requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts" with the forum state. *Id.* at 416.

The second inquiry asks "whether the assertion of personal jurisdiction

comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable under the circumstances of the particular case." *Metropolitan Life*, 84 F.3d at 567 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has held that the court must evaluate the following factors as part of this "reasonableness" analysis:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987).

## C. Wilson

Drake alleges that Wilson is: (1) "an agent of LabCorp . . . which has New York offices"; and (2) "a fully engaged conspirator involved in all aspects of the illegal actions surrounding Drake's testing." Pl.'s Mem. of Law in Opp'n at 30 (citing Decl. of Samuel O. Maduegbuna ("Madu. Decl."), Exs. 3 (documents received from Delta's counsel in Feb. 2000), 13 (letter from Wilson to Whaley dated Nov. 4, 1993)).

Nowhere in Drake's submissions does he allege that Wilson personally transacted business in New York as required under section 302(a)(1); to allow discovery on this issue would be to draw an impermissible "argumentative inference" in Drake's favor. *See Robinson*, 21 F.3d at 507. Nor has Drake "made a sufficient start toward establishing personal jurisdiction" under section 302(a)(3)(ii) that would support limited

discovery, *see Uebler v. Boss Media*, 363 F. Supp. 2d at 506: Although the parties do not dispute that LabCorp has derived substantial revenue from interstate commerce, the "revenues from interstate commerce derived by [a corporation] cannot be attributed to [its non-domiciliary employee]." *PC COM, Inc. v. Proteon, Inc.*, 906 F. Supp. 894, 906 n.10 (S.D.N.Y. 1995) (citing *Lehigh Valley Indus., Inc. v. Birenbaum*, 389 F. Supp. 798, 805 (S.D.N.Y.), *aff'd*, 527 F.2d 87 (2d Cir. 1975)).

Finally, Drake's allegations of conspiracy are not sufficient to support the Court's exercise of personal jurisdiction over Wilson or any of the other defendants. While Drake cites several district court decisions for the proposition that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to the conspiracy may subject the out-of-state defendant to personal jurisdiction in New York, *see, e.g., Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991) (same, citing N.Y. C.P.L.R. § 302(a)(2)), that rule is inapplicable to the present case because (1) Drake does not allege that any of the defendants committed a tort in New York, and (2) Drake's only surviving claim is negligence, for which there can be no conspiracy under New York law. *See infra* Part I.F.

## D. Whaley and West Paces Ferry

To support the Court's exercise of personal jurisdiction over Whaley, Drake alleges that Whaley (1) "earned substantial income ($36,000) from his duties as Delta's [Medical Review Officer]," and (2) "knowingly involved himself with thousands of New York employees and their tests, for financial gain." Pl.'s Mem. of Law in Opp'n at 29 (citing

Madu. Decl., Ex. 33 (Dep. of Dr. William Whaley dated Apr. 30, 2002)). Drake does not dispute that Whaley worked as Delta's MRO "from 1988 through May, 2001," or that Whaley was no longer employed by Delta at the time the action was commenced in December 2001. Decl. of Dr. William H. Whaley ("Whaley Decl.") ¶ 5.

None of Drake's submissions contain an allegation that Whaley transacted business within New York; on the contrary, Drake's primary claim against Whaley is that he was negligent in documenting the testing of Drake's urine sample by laboratories outside New York. *See, e.g.*, Compl. ¶¶ 53 ("LabCorp, in concert with . . . Whaley, sent an aliquot of someone else's urine sample to Northwest . . . claiming that [it] was obtained from Drake."). Accordingly, the Court cannot exercise personal jurisdiction over Whaley pursuant to section 302(a)(1).

Drake's allegations do demonstrate, however, that he has "made a sufficient start toward establishing personal jurisdiction" under section 302(a)(3)(ii). *See Uebler v. Boss Media*, 363 F. Supp. 2d at 506. Drake alleges that Whaley committed negligence outside New York, *see supra* Part I.A, and, by claiming that Whaley "knowingly involved himself with thousands of New York employees," he also alleges that Whaley should have reasonably expected his negligence to have consequences in New York (i.e., Drake's termination). Under the doctrine of respondeat superior, these reasons are also sufficient to make a similarly sufficient start with respect to West Paces Ferry. Unclear from Drake's allegations, though, is whether these defendants' income from contracts with Delta – or from any other source – constituted "substantial revenue from interstate or international

commerce" around the time the action was filed. The Court therefore orders limited discovery on personal jurisdiction over Whaley and West Paces Ferry, including discovery as to whether the exercise of personal jurisdiction over those defendants would comport with due process.

### E. ElSohly

Drake alleges that ElSohly "was and is a corporation doing or transacting business within this judicial district," Compl. ¶ 21, and directs the Court's attention to a statement on ElSohly's website that the laboratory holds a New York Department of Health Lab Director Permit. *See id.* (citing Madu. Decl., Ex. 29 (website printout)). These facts are insufficient for purposes of section 302(a)(1) because Drake does not allege that ElSohly's business activities in New York gave rise to the negligence claim, nor does he dispute that "all communications regarding this case from and to ElSohly have been outside the State of New York." Def.'s Mem. of Law in Support of Mot. to Dismiss at 11 (citing Ex. D (Analysis of Split Specimen)).

As with Whaley, however, Drake's allegations regarding ElSohly may prove sufficient to establish a prima facie showing of personal jurisdiction under section 302(a)(3)(ii) after further discovery. Drake succeeds in alleging that (1) ElSohly committed negligence outside New York, *see* Compl. ¶ 61 ("ElSohly reported negative findings for the presence of drugs and adulterants in Drake's alleged urine sample, but nevertheless conveyed unsubstantiated and improper speculation about the sample to Delta and Whaley."); (2) the negligence caused injury to Drake in New York; and (3) ElSohly derived

24

some income from interstate commerce (e.g., as a Mississippi company, providing services to Delta, a Georgia company) around the time the action was filed. Limited discovery, however, will be needed to determine whether ElSohly could have reasonably expected that its negligence would have consequences within New York, and whether its income from interstate commerce is "substantial." The Court therefore orders limited discovery on personal jurisdiction over ElSohly, including discovery as to whether the exercise of personal jurisdiction over ElSohly would comport with due process.

## CONCLUSION

Defendants' motion to dismiss Drake's claims for tortious interference, negligent misrepresentation, negligent infliction of emotional distress, and civil conspiracy is granted pursuant to Fed. R. Civ. P. 12(b)(6); Drake's claim for prima facie tort, even if properly asserted in his complaint, would also fail under Fed. R. Civ. P. 12(b)(6). All claims against defendants Wilson are dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Drake may pursue his negligence claim against LabCorp, Northwest, Kuntz, ElSohly, Whaley and West Paces Ferry. The parties are directed to proceed to discovery before the assigned magistrate judge on the issues of negligence and personal jurisdiction over ElSohly, Whaley and West Paces Ferry.

SO ORDERED.

/signed/

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 13, 2007