UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
RICHARD W. DRAKE,

     Plaintiff,

 -against-

LABORATORY CORPORATION OF
AMERICA HOLDINGS, KEVIN WILSON,
NORTHWEST TOXICOLOGY, INC.,
DAVID J. KUNTZ, ELSOHLY
LABORATORIES, INC., DR. WILLIAM H.
WHALEY, and WEST PACES FERRY
MEDICAL CLINIC,

     Defendants.
--------------------------------------------------------x

**MEMORANDUM**
Case No. 02-CV-1924 (FB) (RML)

*Appearances:*

| | |
|---|---|
| *For Plaintiff:*<br>SAMUEL O. MADUEGBUNA, ESQ.<br>Maduegbuena Cooper LLP<br>110 Wall Street, 11nd Floor<br>New York, NY 10005 | *For Defendants Laboratory Corporation of America Holdings and Kevin Wilson*:<br>ROBERT I. STEINER, ESQ.<br>Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br><br>D. FAYE CALDWELL, ESQ.<br>Caldwell & Clinton PLLC<br>1001 Fannin Street, Suite 1000<br>Houston, TX 77002<br><br>*For Defendants Northwest Toxicology, Inc., and David J. Kuntz:*<br>THOMAS J. MORTATI, ESQ.<br>Burke, Scolamiero, Mortati & Hurd, LLP<br>Post Office Box 15085<br>Albany, NY 12212 |

*For Defendant ElSohly Laboratories, Inc.:*
JELTJE DEJONG, ESQ.
Devitt Spellman Barrett, LLP
50 Route 111
Smithtown, NY 11787

*For Defendants William H. Whaley and*
*West Paces Ferry Medical Clinic:*
IRA ROSENSTEIN, ESQ.
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103

**BLOCK, Senior District Judge:**

On August 26, 2009, the Court issued an electronic order granting the motions for summary judgment filed by defendants Laboratory Corporation of America Holdings ("LabCorp"), Northwest Toxicology, Inc. ("Northwest") and David J. Kuntz ("Kuntz"). The following is a memorandum of the Court's reasons for that order.

**I**

On December 23, 1993, plaintiff, Richard W. Drake ("Drake"), was fired from his job at Delta Airlines ("Delta"), ostensibly because he had adulterated a urine sample taken in connection with a federally mandated drug test. Since then, he has steadfastly denied that accusation. The long history of his case against Delta, as well as the present case against the testing labs and other individuals involved in the test, is set forth in several decisions of this Court and the Second Circuit:

**A.** *Drake v. Delta*

Proceeding *pro se,* Drake sued Delta in 1994; as amended, his complaint alleged that Delta's administration of his drug test violated the Fourth Amendment and certain federal regulations, and that his termination was wrongful and did not comport with procedural due process.

The Court dismissed the amended complaint in its entirety, *see Drake v. Delta Airlines, Inc.*, No. 94-CV-5944, 1997 WL 397498 (E.D.N.Y. July 10, 1997), but the Second Circuit reinstated Drake's claim that the test violated the Fourth Amendment, liberally construing his *pro se* pleadings to allege that he had not been randomly selected for testing. *See Drake v. Delta Airlines, Inc.*, 147 F.3d 169, 171 (2d Cir. 1998) ("Drake's allegation that the October 28, 1993 test was not randomly administered is sufficient to make out a *prima facie* claim of unreasonableness."). Acting on the circuit court's suggestion, the Court appointed *pro bono* counsel, who diligently pursued the theory that Delta had targeted Drake because of his union activism. A jury returned a verdict in Drake's favor on that theory in 2004; however, the Court set it aside because Drake had failed to offer sufficient evidence that the test was not randomly administered. *See Drake v. Delta Airlines, Inc.*, No. 94-CV-5944, 2005 WL 1743816 (E.D.N.Y. July 21, 2005), *aff'd*, 216 F. App'x 95 (2d Cir. 2007).

**B.** *Drake v. LabCorp et al.*

The present lawsuit was filed in 2001 against (1) LabCorp and its employee, Kevin Wilson ("Wilson"); (2) Northwest and its employee, Kuntz; (3) ElSohly Laboratories, Inc. ("ElSohly"); and (4) Delta's Medical Review Officer ("MRO"), Dr. William H. Whaley ("Whaley"), and his professional association, West Paces Ferry Medical Clinic ("West Paces"). The complaint asserted federal claims under the Fourth and Fourteenth Amendments, as well as state-law claims for negligence, tortious interference, misrepresentation, negligent infliction of emotional distress, conspiracy and spoliation of evidence (the last of which was later withdrawn). The defendants moved to dismiss on numerous grounds, including lack of personal jurisdiction under Rule 12(b)(2), and failure to state a claim and the statute of limitations under Rule 12(b)(6); they further argued that Drake's state-law claims were preempted by the Federal Omnibus Transportation Employee Testing

3

Act ("OTETA"), Pub. L. 102-143, 105 Stat. 917 (Oct. 28, 1991), and its implementing regulations.

On November 18, 2003, the Court dismissed Drake's claims under the Fourth and Fourteenth Amendments for failure to state a claim. *See Drake v. Laboratory Corp.*, 290 F. Supp. 2d 352 (E.D.N.Y. 2003). Notwithstanding the dismissal of the federal claims, however, the Court elected to exercise jurisdiction over Drake's state-law claims and held that they were not, as the defendants had argued, preempted by federal law. *See id.* at 376; *see also Drake v. Laboratory Corp.*, 323 F. Supp. 2d 449 (E.D.N.Y. 2004) (finding diversity jurisdiction and reaffirming decision to exercise supplemental jurisdiction even if diversity jurisdiction did not exist). On interlocutory review, the Second Circuit held that the state-law claims were preempted insofar as Drake claimed "that conduct addressed by the federal regulations is 'wrongful' under state law although it does not violate the federal regulations," *Drake v. Laboratory Corp.*, 458 F.3d 48, 65 (2d Cir. 2006), but not insofar as he claimed "that he [was] entitled to relief under state law for the [defendants'] alleged violations of federal regulations." *Id*. at 63.

On remand, the Court addressed the defendants' other proffered grounds for dismissal. In a memorandum and order dated March 13, 2007 ("the March 13th M&O"), the Court dismissed all remaining claims, except the negligence claim, for failure to state a claim, *see Drake v. Laboratory Corp.*, No. 02-CV-1924, 2007 WL 776818, at *2-*6 (E.D.N.Y. Mar. 13, 2007), and also held that it lacked personal jurisdiction over Wilson. *See id.* at *11. In addition, the Court addressed the statute of limitations issue, holding that the allegations of the complaint set forth a valid basis for tolling the statute:

> If the Court were to consider the filing date only, it would dismiss Drake's negligence claim since it was asserted eight years after the date of injury (i.e., termination of employment). But Drake alleges that defendants ignored his requests for information and intentionally concealed their wrongdoing until February 2000, when the FAA

4

> directed them to produce documents related to the drug tests. Drake's allegations of defendants' purposeful concealment and his own due diligence during the period he wishes to toll are sufficient to state a claim for equitable estoppel; accordingly, the Court denies defendants' motion to dismiss on statute-of-limitations grounds and leaves the issue to be decided at trial.

*Id.* at *7.

Finally, on September 11, 2008, the Court dismissed all claims against Elsohly, Whaley and West Paces for lack of personal jurisdiction. *See Drake v. Laboratory Corp.*, No. 02-CV-1924, 2008 WL 4239844 (E.D.N.Y. Sept. 11, 2008). Thus, the only remaining claim was Drake's claim that the actions of LabCorp, Northwest and Kuntz in connection with his drug test amounted to negligence under New York common law.

## II

On August 14, 2009, the three remaining defendants filed motions for summary judgment reasserting the timeliness issue. They argued that after a full opportunity for discovery, Drake was unable to come forward with sufficient evidence to support his equitable estoppel claim.

The relevant background law is set forth in the March 13th M&O: "In New York, the statute of limitations for negligence is three years. . . . The statute runs from the date of the injury, not the date the injury was perceived." *Drake*, 2007 WL 776818, at *7 (citations omitted). This rule applies even if the plaintiff is unaware that his or her injury was the result of wrongful conduct. *See Woodlaurel, Inc. v. Wittman*, 606 N.Y.S.2d 39, 40 (2d Dep't 1993) ("The general rule in New York is that the Statute of Limitations starts to run when the cause of action accrues, even if the plaintiff is unaware that he or she has a cause of action.").[1]

---

[1] The New York rule is stricter than the federal rule, under which "a claim generally accrues once the plaintiff knows or has reason to know of the injury which is the basis of the action." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). It is undisputed however, that the New York rule governs Drake's negligence claim, which arises under state law. *See Cantor*

5

As noted in the March 13th M&O, New York law allows for tolling of the statute of limitations under a theory of equitable estoppel: "[A] defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Drake*, 2007 WL 776818, at *7 (quoting *Simcuski v. Saeli*, 44 N.Y.2d 442, 448-49 (1978)); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002) ("New York appears to use the label 'equitable estoppel' to cover both the circumstances where the defendant conceals from the plaintiff the fact that he has a cause of action and where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired." (internal quotation marks, citations and alteration omitted)). The tolling lasts only until the plaintiff discovers, or with the exercise of due diligence could have discovered, the deception. *See Simcuski,* 44 N.Y.2d at 450 ("[T]he burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational.").

To successfully invoke the doctrine of equitable estoppel, "[t]he plaintiff must have relied on the defendant's actions, and that reliance must have been justifiable." *Mancuso v. Consolidated Edison Co.*, 905 F. Supp. 1251, 1258 (S.D.N.Y. 1995) (citing *Simcuski*, 44 N.Y.2d at 449). Thus, the doctrine will not apply if, notwithstanding the defendant's conduct, the plaintiff had "knowledge of the basic facts necessary to bring the action within the limitation period." *Id.* at (citing *Augstein v. Levey*, 162 N.Y.S.2d 269 (1st Dep't 1957), *aff'd*, 4 N.Y.2d 791 (1958)); *see also Pearl*, 296 F.3d at 85 ("Pearl was obviously aware of his cause of action for police brutality at the time of the 1967 episode and not only could have sued the officers, but did so.").

---

*Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) ("[I]t is well established that in diversity cases state law governs not only the limitations period but also the commencement of the limitations period.").

**III**

Before turning to the merits of the motions for summary judgment, the Court must address Drake's claim that the Court has already held that he has adduced sufficient evidence to present his equitable estoppel claim to a jury. More specifically, he argues that the Court is bound to deny defendants' motions for summary judgment based on its statement in the March 13th M&O that it would "leave[] the issue to be decided at trial." *Drake*, 2007 WL 776818, at *7.

In the first place, "[a] district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982). Thus, even if Drake's interpretation of the Court's statement were correct, there would be no bar to reconsidering it now.

In any event, Drake's interpretation is *not* correct. The March 13th M&O addressed a motion to dismiss under Rule 12(b)(6). *See id.* ("While a statute-of-limitations defense may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), such motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (quoting *FDIC v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 388 (E.D.N.Y. 1997))). The issue before the Court was therefore whether Drake had *alleged* sufficient facts to make out a claim for equitable estoppel, not whether that claim had sufficient evidentiary support.

Moreover, the statement was immediately followed by a citation to the proposition that "issues of fact as to the application of [a statute-of-limitations] defense must be submitted to the jury." *Id.* at *8 (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243 n.2 (2d Cir. 1984)). Implicit in that principle is the premise that there is a genuine issue of fact to be resolved. Whether equitable estoppel should save an untimely claim is usually a question of fact, but, like any

7

other issue, it can be decided on summary judgment if the undisputed facts "negate, as a matter of law, an essential element of equitable estoppel." *McIvor v. DiBenedetto*, 503 N.Y.S.2d 836, 840 (2d Dep't 1986).

In sum, the statement in the March 13th M&O was no more than a recognition that the timeliness issue could not be resolved at the motion to dismiss stage. It was not a promise to deny an otherwise well-founded motion for summary judgment.

# IV

Central to Drake's claim of equitable tolling is his allegation that the defendants fraudulently concealed their involvement with his drug test. In that regard, he has adduced undisputed evidence that he repeatedly requested from Delta "<u>ALL</u> records relating to [his] last DOT drug test and any records relating to the results." Decl. of D. Faye Caldwell ("Caldwell Decl."), Ex. 23; *see also id.*, Ex. 26 (letter requesting that Delta "take all steps to preserve all records, materials and specimens" relating to test). On September 29, 1994, Delta produced a chain-of-custody form listing CompuChem -- LabCorp's predecessor-in-interest[2] -- as the testing laboratory and a report from LabCorp to Delta stating that the test had been cancelled because the sample was "unsuitable for testing." Decl. of Samuel O. Maduegbuna ("Maduegbuna Decl.") , Exs. 7 (LabCorp's report to Delta), 15 (letter and enclosures from Delta to Drake). For the next five years, Delta maintained that its production was complete except for "documents pertain[ing] to Delta's personnel policies and the discipline imposed in this situation." *Id.*, Ex. 15. However, at Drake's insistence, the Federal Aviation Administration ("FAA") conducted an investigation and, in January 2000, found that Delta's had failed to produce any of the documents contained in its MRO's (i.e., Whaley's) file. *See id.*, Ex 3 (Letter from FAA to Delta). Delta claimed that it had withheld the documents because "DRAKE's request had not specified MRO material." *Id.*, Ex. 21 (Report of Office of Inspector General, Department of Transportation) at 24. Delta finally produced the withheld documents in March 2000.[3]

---

[2]For simplicity's sake, the Court will refer to CompuChem as "LabCorp" throughout the remainder of this memorandum.

[3]The FAA concluded that as a result of its failure to produce Whaley's files, Delta was "subject to a civil penalty not to exceed $11,000.00" for each day that Delta had withheld them. Maduegbuna Decl., Ex. 3  Delta ultimately paid $100,000 to the agency in full settlement of the matter.

If Drake were seeking to equitably estop *Delta* from invoking a statute-of-limitations defense, the Court might well conclude that the foregoing facts create a genuine issue of fact, or perhaps even entitle Drake to equitable estoppel as a matter of law. Delta, however, is not a party to this litigation; rather, the Court must evaluate Drake's claim of equitable estoppel as a pertains to LabCorp, Northwest and Kuntz.[4]

**A. LabCorp**

It is undisputed that Drake knew by December 23, 1993 -- the date of his termination -- that he was being fired based on his drug test; therefore, it is understandable why he sued Delta in December 1994. By that time, however, Drake also knew that LabCorp was involved in the test: The documents produced by Delta in September 1994 clearly identified LabCorp as the laboratory that had tested Drake's urine specimen.

The facts known to Drake in 1994 were sufficient for him to assert a cause of action against LabCorp. All that is required to assert a cause of action are "the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or the person or entity that inflicted it." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (quoting *Guccione v. United States*, 670 F. Supp. 527, 536 (S.D.N.Y. 1987)). Here, Drake knew that he had been fired based on a drug test conducted by LabCorp. Those facts, coupled with his steadfast insistence that he had not taken any drugs or adulterants, were sufficient to motivate him to promptly and vigorously pursue the

---

[4]The Court expresses no opinion as to whether Drake might have a viable claim against Delta for concealing possible causes of actions against third parties. *Compare Ortega v. City of New York*, 9 N.Y.3d 69, 83 (2007) ("[W]e join the majority of jurisdictions to consider the issue and decline to recognize spoliation of evidence as an independent tort claim."), *with IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 882 N.Y.S.2d 60, 63 (1st Dep't 2009) ("The Court of Appeals' decision in *Ortega* . . . does not require dismissal of . . . claims for fraud and fraudulent concealment simply because the vehicle for the alleged fraudulent conduct was concealment of evidence.").

theory that Delta had used the drug test to concoct an excuse for terminating him for his union activism. They should also have alerted him to the alternative theory that LabCorp had simply botched the test.

Drake argues that his knowledge of LabCorp's involvement does not foreclose his claim of equitable estoppel because the documents available to him in 1994 did not provide "the slightest indication . . . of the myriad injurious activities against Drake by LabCorp and its employees," and because no such information was available to him until "the release of incriminating documents against LabCorp by the FAA in 2000." Pl.'s Mem. of Law at 17. In describing the related doctrine of equitable tolling, however, the Second Circuit has made "an important distinction between fraudulent concealment of the existence of a cause of action and fraudulent concealment of facts that, if known, would enhance a plaintiff's ability to prevail as to a cause of action of which the plaintiff was previously aware." *Pearl*, 296 F.3d at 84.[5] Describing New York's tolling principles as "less liberal," the circuit court saw "no reason to think that New York . . . would not make the same distinction." *Id.* Or, as another district court put it, "the fact that plaintiffs may not have known all the facts giving rise to their claims is of no consequence; that is why parties engage in discovery." *Statistical Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468, 478 (S.D.N.Y. 2000).

In sum, Drake's knowledge of LabCorp's involvement in his drug test was sufficient for him to bring suit. Because that alone precludes him from invoking equitable estoppel against LabCorp, the Court need not address whether LabCorb fraudulently concealed its involvement or

---

[5]As noted in *Pearl*, "[t]he taxonomy of tolling, in the context of avoiding a statute of limitations, includes at least three phrases: equitable tolling, fraudulent concealment of a cause of action, and equitable estoppel." 296 F.3d at 81. Although "the reported decisions of the federal and state courts do not always mean the same thing by their use of these phrases," *id.*, the difference in terminology is immaterial for present purposes.

11

whether Drake exercised due diligence.

**B. Northwest/Kuntz**

Drake learned of the involvement of a second lab -- now known to be Northwest -- at some point prior to July 24, 1996, when he filed his amended complaint in the litigation against Delta. The amended complaint alleged that Delta "stated that the 'B' sample was sent to a second laboratory," but "has never produced proof that a second laboratory was consulted" and "has refused to produce any supporting documentation on the alleged determination of an adulterant by a second laboratory." Maduegbuna Decl., Ex. 2 at 8. It is undisputed, however, that Drake was not aware that the "second laboratory" was Northwest, or that Kuntz was the Northwest employee who had certified his test results, until Delta produced Whaley's records to Drake in March 2000. Thus, Drake is chargeable only with knowledge of a possible cause of action against unknown defendants.

Northwest and Kuntz posit that such knowledge was sufficient to allow Drake to bring an action against them within the limitations period because he could have sued LabCorp, named them as "Doe" defendants, and learned their identities in the normal course of discovery. *See* N.Y.C.P.L.R. § 1024. That course of action would indeed have stopped the three-year clock, but only if Drake were able to identify Northwest and Kuntz, and effect service on them within 120 days. *See Luckern v. Lyonsdale Energy Ltd. P'ship*, 654 N.Y.S.2d 543, 546 (2d Dep't 1997) ("[U]nder New York's new commencement-by-filing system, a claim asserted against unknown parties pursuant to CPLR § 1024 is deemed to be interposed for Statute of Limitations purposes when the 'John Doe' summons with notice is filed with the clerk of the court. . . . [P]laintiffs then had an additional 120 days to discover the identities of the unknown parties and to serve them with a copy of the summons . . . ."). As the Second Department has recently observed, this procedure places plaintiffs in an "unenviable position" because "[t]he mechanics of serving process upon known parties, joining issue, demanding discovery, and receiving meaningful responses will, as a practical matter, exhaust, in many cases, all or most of the 120-day period," *Bumpus v. New York City Transit Auth.*, 883 N.Y.S.2d 99, 106 (2d Dep't 2009); its harshness can be tempered by obtaining an extension of time to effect service, but that remedy "is discretionary on the part of the court." *Id.*

The Court need not give its *imprimatur* to this trap for the unwary. Even if the Court were to conclude that Drake lacked knowledge of sufficient facts to sue Northwest and Kuntz within the limitations period, equitable estoppel could save his claim only if he could establish that those defendants fraudulently concealed their involvement from him. It is, however, undisputed, that neither Northwest nor Kuntz had any contact with Drake until he filed the present action in 2001; instead, Drake adverts solely to Delta's repeated refusals to provide information and LabCorp's

13

failure to respond to a similar request in 1996. "[T]he doctrine of fraudulent concealment tolls the statute of limitations only as to those defendants who committed the concealment, and plaintiffs may not generally use the fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants." *Griffin v. McNiff*, 744 F. Supp. 1237, 1256 n.20 (S.D.N.Y. 1990).

## V

Drake's perseverance in attempting to clear his name has been truly laudable. In a similar vein, his counsel has gone above and beyond the obligations of his initial appointment on his client's behalf. Nevertheless, the Court cannot ignore its obligation to apply the law. Here, New York law mandated dismissal because Drake had sufficient knowledge to sue LabCorp within the limitations period and failed to offer any evidence that his lack of knowledge concerning Northwest's or Kuntz's involvement with his test was the result of fraudulent concealment by those defendants. As a result, he cannot invoke equitable estoppel against any of the three remaining defendants.

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 3, 2009